**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

MARTHA LUSHUTE

CIVIL ACTION NO. 10-252-JJB-SCR

VERSUS

STATE OF LOUISIANA, DEPARTMENT
OF SOCIAL SERVICES

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a motion for summary judgment (Docs. 12, 16) filed by defendant, the State of Louisiana, Department of Social Services ("DSS"), on a claim for retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, filed by plaintiff Martha Lushute ("Lushute"). Lushute filed an opposition (Doc. 20), to which DSS filed a reply (Doc. 22). Oral argument is unnecessary. The Court has federal question jurisdiction under 28 U.S.C. § 1331.

**I.**

Lushute has worked for DSS as a social service analyst since 2002. (Status Report, Doc. 8, § B.1). At some point in 2006, Lushute was transferred to work in Iberville Parish on an alternative work schedule. (DSS Statement of Undisputed Facts, Doc. 16-2, ¶¶ 1-2). Instead of the traditional workweek, Lushute was granted an alternative work schedule where she worked four, ten-hour days per week. (*Id.*, ¶ 2). Lushute initially requested that she be placed on FMLA intermittent leave in November 2007, though she submitted the request to her supervisor rather than the human resource department. (Lushute Deposition, Doc. 20-1, pp. 8-12, 27-28). Lushute requested FMLA leave based on her diabetic and kidney conditions. (*Id.*, pp. 8-10).

On April 8, 2008, Lushute received a "needs improvement" performance rating during her job evaluation, based on client complaints, an uncooperative attitude, deficient work product,

1

and repeated unscheduled absences and tardiness. (DSS Statement of Undisputed Facts, Doc. 16-2, ¶ 9; *see also* Doc. 14-6 (evidence pertinent to performance rating)). Because of this performance rating, she did not receive a merit pay increase. (*Id.*, ¶ 10).

Lushute renewed her FMLA request in July 2008 with the assistance of counsel and was eventually placed on FMLA leave on August 11, 2008. (DSS Statement of Undisputed Facts, Doc. 16-2, ¶ 5).[1]

In April 2009, Lushute renewed her request for FMLA leave, and she did the same the following year. (Lushute Deposition, Doc. 20-1, pp. 29-30). In May 2009, however, when DSS approved Lushute's renewed FMLA request, it also involuntarily removed Lushute from her alternative four-day work schedule and placed her back into a traditional five-day, eight hour per day work schedule. (DSS Statement of Undisputed Facts, Doc. 16-2, ¶ 13). Lushute consistently missed additional days of work and DSS maintained that Lushute's work performance continued to be deficient. (*Id.*, ¶ 15). When meeting with Lushute to inform her of the move from a four-day to a five-day workweek, DSS officials informed Lushute that they thought the move would help her accomplish more work, noting among other things that she had been taking a lot of leave time in the four-day structure. (Lushute Deposition, Doc. 20-1, pp. 21-22).

Lushute filed suit in this Court, asserting that her performance rating and the work schedule switch constituted instances of retaliation in violation of FMLA. She alleges damages

---

[1] Lushute failed to properly contest the date in 2008 when she first formally made a FMLA request. *See* Fed. Rule Civ. P 56(e); Local Rule 56.2 (deeming admitted any fact which a movant contends is undisputed unless the nonmovant properly controverts the fact). While plaintiff at times argues that she made the FMLA request in April 2008 rather than in July 2008, (*see, e.g.,* Lushute Deposition, Doc. 20-1, pp. 27-29), at other times plaintiff concedes that it was in fact July 2008 (*see, e.g.,* Status Report, Doc. 8, § B.1). The Court follows Local Rule 56.2 and deems as conclusively admitted, for purposes of this motion, that July 2008 was her first formal FMLA request.

for lost accrued leave time and lost wages due to her alleged need to use unpaid leave in the amount of $3,561.32.  (Status Report, Doc. 8, § E).

<h2 style="text-align:center">II.</h2>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.*  The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.*  A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996).  Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051.  If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

**III.**

A. Governing Law

Lushute's sole claim is one for retaliation in violation of 29 U.S.C. § 2615(a)(2).[2] She points to two discrete instances where retaliation occurred – her April 2008 performance rating and DSS's decision to switch her from an alternative work schedule back to a traditional work schedule.

The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, permits employees to, among other things, take reasonable leave from their jobs for medical reasons. 29 U.S.C. § 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." To state a *prima facie* case for retaliation under § 2615(a)(2), a plaintiff must show that:

    (1) she was protected under the FMLA; and
    (2) she suffered an adverse employment decision; and either
    (3) a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or
        b) the adverse decision was made because she took FMLA leave.

*Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 768 (5th Cir. 2001). The third factor measures whether a causal link exists between the protected activity and the adverse action. *Id.*

The Fifth Circuit has declared that the traditional *McDonnell Douglas* burden-shifting framework used in various other discrimination statutes is applicable to FMLA retaliation claims. *Id.* However, following the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (permitting use of circumstantial evidence in analyzing Title VII discrimination cases), the Fifth Circuit now recognizes a modified *McDonnell Douglas* approach to analyzing other anti-discrimination statutes. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th

---

[2] Plaintiff has not brought a claim for interference with her FMLA rights under 29 U.S.C. § 2615(a)(1). (*See, e.g.*, Plaintiff's Status Report, Doc. 8 (describing nature and basis of her retaliation claim)).

Cir. 2004) (applying *Desert Palace* holding to claims under the Age Discrimination in Employment Act). This Court has already found that this modified *McDonnell Douglas* approach applies to FMLA retaliation claims in *Oby v. Baton Rouge Marriott*, 329 F.Supp.2d 772 (M.D.La. 2004). *See also Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327 (5th Cir. 2005) (endorsing this approach for FMLA retaliation cases).

The upshot is that after the plaintiff demonstrates a valid *prima facie* case of FMLA discrimination under the three elements stated above, the burden of production rests on the defendant to articulate a legitimate, non-discriminatory reason for its decision to institute the adverse action against plaintiff. *Rachid*, 376 F.3d at 312. If the defendant does so, then the plaintiff must either prove the proffered reason is untrue (and thus merely a pretext for discrimination) or prove that the proffered reason, while true, was only one of the reasons for its conduct, another motivating factor of which was retaliatory animus for plaintiff's exercise of a protected right. *Id.* If the plaintiff proves an illegitimate motivating factor existed, the defendant has the opportunity to demonstrate that it would have taken the same action in the absence of the impermissible motivating factor. *Id.* at 312-13 (citing *Louis v. East Baton Rouge Parish Sch. Bd.*, 303 F.Supp.2d 799, 801-04 (M.D.La. 2003).[3]

B. Application

Defendants do not dispute that Lushute is covered by FMLA. Lushute, in turn, does not allege that she suffered less favorable treatment than other employees who did not request FMLA leave. To state a *prima facie* case for FMLA retaliation in this case, therefore, Lushute

---

[3] Defendant asserts a two year limitations period applies, 29 U.S.C. § 2617(c)(1). Plaintiff alleged a willful violation in order to benefit from a longer, three year period under 29 U.S.C. § 2617(c)(2). (*See* Complaint, Doc. 1, ¶ 17). However, in response to defendant's contention that the shorter period applies, (Memo. in Supp., Doc. 16-1, p. 6), plaintiff has not set forth any arguments or facts to expand the limitations period from the default, two year period. The Court thus applies the two year limitations period and omits events which allegedly occurred over two years before April 14, 2010, the day this action was filed.

must show that she suffered an adverse employment action and that the action was caused by her taking FMLA leave. Lushute strictly argues a mixed-motives analysis is appropriate here. (*See* Memo. in Opp., Doc. 20, pp. 4-7).

> 1. *Has Lushute Brought a Valid FMLA Retaliation Claim Regarding Her Denial of a Merit Pay Increase Resulting from the April 2008 Performance Rating?*

Even assuming *arguendo* that Lushute has stated a *prima facie* case and has shown the possibility of an impermissibly discriminatory motivating factor for the decision to issue the April 2008 performance rating, she simply cannot overcome the "same decision" defense. The record contains ample evidence for the decision to issue her a "needs improvement" rating which denies Lushute a merit pay increase**.** (*See* Doc. 14-6, pp. 12-67 (cataloging basis for April 2008 performance rating). Lushute was not only cited for excessive leave time, but also for excessive tardiness to work, a poor attitude toward co-workers and customers, and overall low customer satisfaction. (*See* Performance Rating of April 2008, Doc. 14-6, pp. 3-11). Moreover, Lushute lost her appeals through the state system to substantively reverse the decision.[4] (Doc. 14-6, pp. 1-2 (regional supervisor affirming in relevant part the performance rating issued by Lushute's direct supervisor); Memo. in Support, Doc. 16-1, p. 4 (stating that the Louisiana Civil Service Commission also affirmed the rating).[5] DSS has therefore presented sufficient facts to show it is entitled to judgment as a matter of law on Lushute's retaliation claim arising from the denial of merit pay increase. Summary judgment is therefore granted to DSS on this claim.[6]

---

[4] The parties did not address the extent to which exhaustion might require a different avenue for challenging her performance rating or preclusion principles might narrow the scope of this Court's inquiry into the facts underlying the decision to issue the performance rating. Since summary judgment is appropriate on the grounds argued by DSS, the Court likewise declines to address those issues.

[5] Critically, Lushute did not contest the rating she received in the performance review's section on "Dependability," which reviews an employee's use of leave. (Doc. 14-6, p. 4). She merely contested the performance comments made in that section. (*Id.*, p. 1-2).

[6] Summary judgment is further proper once the Court excludes the allegations outside the two year statute of limitations (the November 2007 FMLA request) and the uncontroverted facts brought forward by DSS (that

## 2. Did the Reversion from an Alternative to a Traditional Work Schedule Result from a Retaliatory Motive for Lushute's Exercise of Her FMLA Rights?

A more detailed discussion is required to analyze whether retaliation permeated DSS's decision to switch Lushute from an alternative work schedule back to a traditional workweek. Under the regulations implementing FMLA, an "employer cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c). Whether the forced reversion from an alternative work schedule to a traditional workweek— eight hours a day, five days a week—is an adverse employment action, as contemplated by FMLA, is a close call. In and of itself, her job was not negatively affected because no "ultimate employment decision" occurred. *See Hunt*, 277 F.3d at 769 (holding "that only ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating, satisfy the adverse employment action element of a prima facie case of retaliation") (quotations and citations omitted). Neither Lushute's pay nor her required working hours varied. The implementing FMLA regulations "do not make every unpopular employment decision following FMLA leave a retaliatory adverse employment action." *Hunt*, 277 F.3d at 770. Circuit law is clear that "a shift change, without more, is not an adverse employment action." *Hunt*, 277 F.3d at 769 (citing *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)).

Lushute, however, argues that her repeated need to visit her doctors to receive treatment could only be accomplished on her off day in the alternative work schedule, which would necessitate her to take more leave time under the traditional work schedule. This fact, Lushute

---

Lushute's first formal FMLA request occurred in July 2008, *after* her April 2008 performance rating). The exclusion of these facts—facts which Lushute fails to controvert—compels the conclusion that DSS could not have had an improper motive to retaliate against her for exercising FMLA rights.

argues, caused her to quickly burn through accrued sick leave and forced her to take leave without pay to visit the doctor, which she might otherwise have been able to avoid had she remained under the alternative work schedule. While this argument may conceivably have credence in the abstract, it does not control disposition of this case.

First, as DSS points out and Lushute does not contest, working an alternative work schedule is a privilege and not a right for DSS workers. (Affidavit of Jo Ann Glasper, Doc. 14-5, ¶ 15). It is therefore questionable whether the work schedule change could, at least on its face, adversely affect Lushute's job. Second, Lushute has not directed the court to any record evidence which establishes that she needed the alternative work schedule only to visit her doctors. Third, after she received a letter from her supervisor informing her of the switch back to the traditional workweek, she had an opportunity to request a work schedule change that might have accommodated her doctors' appointments. (Letter from Karen Williams to Martha Lushute dated May 6, 2009, Doc. 14-8, p. 46). No record evidence exists showing Lushute made such a request. Fourth, Lushute fails to dispute that DSS treated other workers similarly insofar as work schedule change were ordered when other workers failed to adequately manage their caseload. (Glasper Affidavit, Doc. 14-5, ¶¶ 16-19; *see* Reply Brief, Doc. 22, p. 4 (confirming that relevant sections from Glasper's affidavit do in fact refer to Glasper's actions)).[7] Fifth, Lushute implies that her reassignment was, in fact, motivated because "she could not manage her caseload." (Memo. in Opp., Doc. 20, p. 8). This comes close to conceding that Lushute could not manage her job responsibilities, which would insulate DSS based on the "same decision" defense.

---

[7] The Court notes the sloppy drafting of this affidavit. The affiant refers to herself in the third person, making it difficult to comprehend, thus requiring a bit of artful reconstruction by the Court to ascertain the points being made. Because the affiant is supposedly testifying based on personal knowledge, it would do better to use the first person.

In short, Lushute has not made out a *prima facie* case of retaliation and has failed to put into genuine issue any material fact which might prevent judgment as a matter of law against her. Accordingly, summary judgment in favor of DSS is appropriate.

## IV. CONCLUSION; ORDER

For the written reasons assigned, defendant's motion to summary judgment is GRANTED.

Signed in Baton Rouge, Louisiana, on November 28, 2011.

 

_____
**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**